UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BETTY COLEMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 04-852 (RCL) |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This matter, brought under the Social Security Act, 42 U.S.C. § 405(g) (2000), is before the Court on defendant's motion for summary affirmance of the Commissioner's denial of benefits and Ms. Coleman's motion for reversal. Ms. Coleman filed an application for Supplemental Social Security Income on February 15, 2000, claiming that she became disabled on November 26, 1996. On October 1, 2002, the Administrative Law Judge ("ALJ") held a hearing where Ms. Coleman testified on her own behalf. In a written decision issued August, 26 2003, the ALJ denied Ms. Coleman's application. The Appeals Council denied Ms. Coleman's request for review on March 11, 2004. Ms. Coleman timely filed this action on May 24, 2004. Upon consideration of the parties' submissions, and the entire record, herein, defendant's motion will be denied and plaintiff's motion will be granted.

I.   **STANDARD OF REVIEW**

The Social Security Act permits a person to file a civil suit to obtain review of a decision by the Commissioner of Social Security. § 405(g). The final decision of the Commissioner is

conclusive if supported by substantial evidence and untainted by error of law.  Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987).  It is the duty of the ALJ to make findings of fact and to resolve conflicts of evidence.  Martin v. Apfel, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)).  The reviewing court must scrutinize the entire record, but may not reassess the weight of the evidence, nor substitute its judgment for that of the Commissioner, if the decision is based on substantial evidence.  Brown v. Barnhart, 370 F. Supp. 2d 286, 288 (D.D.C. 2005).  All the while, the Court must bear in mind that the remedial purpose of the Social Security Act requires a liberal construction in favor of the disability.  Davis v. Shalala, 862 F. Supp. 1, 2 (D.D.C. 1994).

## II.    LEGAL FRAMEWORK

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step process for evaluating a person's disability.  The claimant must prove that she is not presently engaged in substantial gainful work and has a severe impairment that significantly limits her ability to do basic work activities.  She must also prove that either suffers from an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404, or is incapable of performing "past relevant work."  20 C.F.R. §§ 404.1520, 404.920.  If the latter, the Commissioner must determine whether the claimant's residual function capacity enables the claimant to perform other work that exists in substantial number in the national economy.  Id.

III.  **ADMINISTRATIVE RECORD**

    A.  **Employment History**

At the time of the ALJ's decision, Ms. Coleman was 61 years old; she was 54 years old when she stopped working due to her disability. (Administrative Record ("R") at 20.) Ms. Coleman has a high school education supplemented by nurse's assistant training. (Id.) She last worked as a security guard at an apartment complex where she primarily monitored video cameras. (R. at 25.) Previously, Ms. Coleman worked as a medical assistant, operations coordinator, and residential advisor. (R. at 20.)

    B.  **Medical History**

The record contains medical records from various treating physicians from 1995 through 2001. Records from the George Washington University Health Plan from 1996 to 2001 indicate treatment for diabetes, low back pain, kidney infection and seizure disorder. (R. at 22) Specifically, X-rays revealed a vacuum disc and disc protrusion which possibly impinged on a nerve. (Id.) Notes from 1997 demonstrate that Ms. Coleman's diabetes was not well controlled due to dietary indiscretion and lack of exercise. (Id.) Furthermore, around the same time, Ms. Coleman stopped taking her seizure medication. (Id.) In 2000, X-rays of her cervical spine revealed degenerative developments such as osteophyte formation and joint space narrowing. (R. at 23.)

Dr. Samuel Potolicchio, a neurologist, examined Ms. Coleman between 1995 and 2000. He reported that Ms. Coleman suffered from post-injury head trauma, had a history of amnesia episodes and has had seizures since childhood. (R. at 22.) On June 15, 2000, Ms. Coleman sought a disability evaluation from Dr. Potolicchio in which he reported that his findings of her

neurological problems could not support a disability claim.  (R. at 22.)

A medical report dated March 1, 2001, submitted by Dr. Khairia Omran reported Ms. Coleman's medical history.  This history included kidney stones, seizure disorder, fatigue and stress, insulin dependent-diabetes, neuropathy, musculoskeletal complaints, status-post motor vehicle accident, history of amnesia and status-post hospitalization for chest pain.  (R. at 24.)  Dr. Omran also noted that Ms. Coleman was taking several medications, including Tegretol, Verapamil, Novolin, and Alkalz.  (Id.)  Additionally, Dr. Omran stated that Ms Coleman had some sensory loss and decreased reflex abnormalities but no motor deficits or atrophy.  (Id.)  She was unable to walk at times, rotate her left shoulder, and abduction of her right hip was decreased, all due to pain.  (Id.)

Ms. Coleman switched to Kaiser Permanente in 2001 where she underwent another examination.  (Id.)  Ms. Coleman complained to her doctor of dizziness and drowsiness, but the doctor indicated that they would monitor her before changing her medical regime.  (R. at 323.)

**C.     Administrative Hearing**

The ALJ held a hearing in which he heard testimony from Ms. Coleman and a vocational counselor.  Ms. Coleman testified about her experience as a security guard, medical assistant and residential advisor.  (R. at 314-22.)  She also testified about her medical history.  Ms. Coleman stated that she feels dizzy and drowsy all day long.  (R. at 322-23.)  She admitted to living a sedentary lifestyle.  She only goes upstairs once or twice a day.  (R. at 324.)  She does not perform any yard work, or gardening, attend church anymore, socialize with friends, cook, engage in hobbies, and sleeps most of the day due to her medication.  (R. at 325-27.)  Ms. Coleman reported that this lack of activity results from her pain and the side effects of her

medication. (R. at 327.) Ms. Coleman also noted her inability to handle certain objects due to arthritis and carpal tunnel syndrome. (R. at 326.) She stated that she cannot even lift a gallon of milk without dropping it. (R. at 332.)

The ALJ also examined Dr. Adina Leviton, an independent vocational expert. The ALJ asked whether there was work for Ms. Coleman given her various ailments and limitations. (R. at 341-42.) The expert testified that there was no work for Ms. Coleman in the national economy given her medical treatment, medications, pain, and medication side effects. (R. at 342.)

### D.     Administrative Findings

The ALJ determined that Ms. Coleman did not meet the disability requirements. (R. at 27.) She had not engaged in substantial gainful activity since the alleged onset of the disability. (Id.) Ms. Coleman has an impairment or a combination of impairments considered "severe" based on the requirements in 20 CFR §§ 404.1520(b) and 416.920(b). (Id.) Her medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation no. 4. (Id.) The ALJ found that Ms. Coleman's statements regarding her limitations were not totally credible. (Id.) Thus, the ALJ concluded that Ms. Coleman was not under "disability" as defined in the Social Security Act at any time through the date of the decision. (Id.)

The ALJ found that Ms. Coleman retained the residual function capacity to perform sedentary work. (Id.) She was precluded from lifting and/or carrying objects weighing more than ten pounds; limited to walking/standing no more than two hours in an eight-hour workday; limited to sitting no more than six hours in an eight-hour workday; and should avoid heights and hazardous machinery. (Id.) The ALJ determined that even with these limitations, Ms. Coleman

could perform work similar to her past work as a security guard.  (Id.)  Ms. Coleman's medically determinable diabetes mellitus (insulin dependent), cervical and lumbar spine degenerative disc disease, and hypertensive cardiovascular disease, would not prevent her from performing her past relevant work.  (R. at 28.)

In arriving at his findings, the ALJ did not find Ms. Coleman's complaints of pain wholly credible.  (R. at 26.)  The ALJ seemingly relied on her past non-compliance with her medical regime, her continued smoking, and sedentary lifestyle.  (Id.)  The ALJ also gave great weight to Dr. Potolicchio's inability to support a disability claim solely on her neurological condition.  (Id.)  The ALJ did not discuss the impact of the side effects of Ms. Coleman's medication on her ability to work.  Additionally, in his findings, the ALJ did not assess the opinion of the vocational expert who testified that there was not work for Ms. Coleman in the national economy because of her functional limitations, medical history, subjective pain, and the side effects of her medication.

## IV.   DISCUSSION

The ALJ's failure to acknowledge the side effects of her medication and the contrary opinion of the vocational expert constitutes error and leads this court to the conclusion that the denial of disability insurance did not rest on substantial evidence.  While the Court is not in a position of fact finder and cannot reassess the evidence, the court may determine whether the ALJ evaluated all the relevant evidence.  Taylor v. Heckler, 595 F. Supp. 489, 492 (D.D.C. 1984).  "The ALJ's failure to evaluate probative evidence submitted by plaintiff or to explain why he deemed plaintiff's claim of pain not credible is 'good cause' to reverse the [Commissioner's] decision on grounds that it is unsupported by substantive evidence."  Id.  The

ALJ may not disregard unfavorable evidence. "It is reversible error for an ALJ to fail . . . to explain sufficiently the weight he has given certain probative items of evidence." Martin, 118 F. Supp.2d at 13.

### A. Medication

The ALJ failed to consider the relationship between the side effects of her medication and Ms. Coleman's inability to work. The ALJ must consider the cumulative effects of all the claimant's ailments and medications. Martin, 118. F. Supp. 2d at 15 (finding that failure to consider that medication caused claimant to sleep for several hours per day was error). A Social Security Disability determination is incomplete if it relies on the claimant's limitations but ignores the side effects of the medication used to cope with those limitations. The ALJ should have viewed Ms. Coleman's situation "not atomistically but synergistically by understanding the interrelated consequences of her physical and psychological problems and of the medication she had to take to secure relief from them." Id. at 16.

The ALJ ignored or refused to acknowledge the side effects of Ms. Coleman's medication. She testified that she is dizzy and drowsy all day long. (R. at 322.) This causes her to sleep for several hours in the morning and several hours in the afternoon. (R. at 331-32.) Ms. Coleman testified that she complained about the side effects of her medication, but the treating physicians said that nothing could be done to help her. (R. at 323.) Failure to consider the effect of her medication constitutes error. The cumulative effect of Ms. Coleman's limitations and the effect of her medications made it impossible to find work in the national economy. Accordingly, the ALJ's findings did not rest on substantial evidence.

### B. Vocational Expert

The ALJ also failed to acknowledge the opinion of the vocational expert.  The ALJ has a responsibility to obtain evidence from a vocational expert to clarify the effect of the cumulative conditions on the claimant's ability to perform work similar to that done in the pas.  Lockard v. Apfel, 175 F. Supp. 2d 28, 31 (D.D.C. 2001).  Just as an ALJ may not arbitrarily disregard the testimony of a claimant's treating physicians, see Butler v. Barnhart, 353 F.3d 992, 1003 (D.C. Cir. 2004), an ALJ may not disregard the uncontroverted opinion of a vocational expert without justification unless, for example, he disputed the complainant's subjective complaints on which the expert based her findings.  See Males v. Sullivan, 726 F. Supp. 315, 318 (D.D.C. 1989).

In the instant case, the ALJ posed the following hypothetical to the vocational expert at Ms. Coleman' administrative hearing:

> [Q]:  Now using [Ms. Coleman's medical history].  And considering medical treatment, medications, pain, medication side effects.  Assume an individual, if you would please, who is 55 to 59 years of age, who has a . . . high school education, who has past work experience as identical to that, which has been described by the claimant.  Assume further that this individual was limited to lifting and carrying up to ten pounds occasionally, walking and standing up to two hours out of eight, sitting up to six hours out of eight.  Assume further that because of pain and medication side effects, this individual – the results in sleep for one or more hours, two or more times per day.  Are there jobs this person could do?
> [A]:  No, sir. There would be no work.  (R. at 341-42.)

The ALJ did not spend a word explaining why he lent no weight to the vocational expert's opinion.  The absence of any such explanation is quite conspicuous.  Moreover, this is not a situation where the ALJ discounted Ms. Coleman's subjective complaints and thus rendered the expert's opinion toothless.  He did not find Ms. Coleman's testimony wholly credible, but did not undermine the basis of the hypothesis posed to the expert.

Interestingly, the expert did consider the side effects of the medication.  This is in stark

contrast to the opinion of the ALJ and it convinces the Court that, had the ALJ considered the cumulative effect of Ms. Coleman's limitations and medications, he would have come to the conclusion that Ms. Coleman was disabled for the purposes of Supplemental Security Income.

### C. Reversal

The ALJ's conclusion was incomplete and contrary to the weight of the medical evidence and the testimony of the independent vocational expert. Although remand is more common than reversal, it is appropriate for the Court to reverse the decision for several reasons. First, Ms. Coleman applied for these benefits over five years ago. "Remand should not further delay the award of benefits." Lockard, 175 F. Supp. 2d at 34   Second, the administrative record has been fully developed thus, there is no further inquiry that this Court need require of the ALJ. Third, proper consideration of the vocational expert's opinion and inclusion of the side effects of Ms. Coleman's medication would have led to the conclusion that Ms. Coleman is disabled for the purposes of Supplemental Social Security Income. See Martin, 118 F. Supp. 2d at 18 (granting reversal where final outcome not in doubt).

### V. Conclusion

For the foregoing reasons, defendant's motion to affirm shall be denied and Ms. Coleman's motion to reverse shall be granted. Benefits shall commence immediately.

A separate Order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, November 17, 2005.